MAILED TO COUNSEL
Petitioner

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
CURTIS QUINONES,                :      11 Civ. 5557(LAP)
                                :
                Petitioner,     :
                                :      MEMORANDUM & ORDER
        v.                      :
                                :
UNITED STATES OF AMERICA        :      Related To:
                                :      08 Cr. 114 (LAP)
                Respondent.     :
------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

   Pro se Petitioner Curtis Quinones ("Quinones" or "Petitioner") makes this motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. A jury found Mr. Quinones guilty of one count of assault with intent to commit murder, in violation of 18 U.S.C. § 7(3), and one count of assault with a dangerous weapon, in violation of 18 U.S.C. § 113(a)(3). Petitioner was sentenced to 121 months incarceration concurrent on each count to be followed by supervised release for a period of three years.

   In support of his motion, Quinones raises eight instances of alleged ineffective assistance of counsel within the meaning of the Sixth Amendment to the United States Constitution. First, Petitioner claims that his trial counsel, Domenick Porco, Esq., ("Porco") was ineffective in that he failed properly to investigate evidence proffered by the Government and failed to call certain favorable witnesses during trial. (See

1

Petitioner's Motion to Vacate, Set Aside, or Correct his Sentence under 18 U.S.C. § 2255 ("Pet. Mot.") at 6-9, dkt. no 1.)  Second, Petitioner argues that his counsel was unprepared for trial and failed to conduct sufficient pretrial discovery.  (Id. at 13-15.)  Third, Petitioner alleges that his counsel was ineffective for failing to request a limiting instruction regarding Government Exhibit Two, a weapon found on the prison grounds.  (Id. at 16-20.)  Fourth, Petitioner asserts that his trial counsel failed to object to the introduction of extrinsic evidence as overly prejudicial and/or irrelevant and that his appellate counsel, Kerry Lawrence, Esq., ("Lawrence") was in turn ineffective when he failed to raise this issue on appeal.  (Id. at 20-23.)  Fifth, Petitioner claims his trial counsel was ineffective with regard to plea bargaining because trial counsel did not inform him of the admissibility of certain evidence.  (Id. at 24-28.)  Sixth, Petitioner argues that his appellate counsel was ineffective during his post-trial Rule 33 hearing before the District Court by not properly advising him prior to his giving testimony that resulted in a two point enhancement for obstruction of justice.  Petitioner further alleges that his appellate counsel was ineffective during his direct appeal by not properly investigating the facts of his case and by focusing on Petitioner's ineffective assistance claims on appeal to the detriment of Petitioner's alternative claims on appeal.  (Id. at

29-34.)  Seventh, Petitioner contends that his appellate counsel provided ineffective assistance by not arguing that Government Exhibit Two was inadmissible and prejudicial extrinsic evidence as part of his direct appeal.  (Id. at 34-36.)  Finally, Petitioner claims that his trial counsel was ineffective by stipulating to the DNA evidence subsequently admitted at trial. (Id. at 36-38.)  For the reasons below, Petitioner's motion is DENIED in all respects.

I.   BACKGROUND

   A.   Procedural History

   Petitioner Quinones was tried in February 2009 and convicted on all charged counts.  (See Memorandum of Law of the United States of America in Opposition to Petitioner's Petition for a Writ of Habeas Corpus ("Govt. Opp.") at 1, dkt. no. 6.) Petitioner then filed a Fed. R. Crim. P. 33 motion for a new trial and was appointed new counsel.  An evidentiary hearing on the motion was held on December 15, 2009.  (Id.)  At this hearing, Petitioner primarily claimed that he had received ineffective assistance of counsel at trial.  (Id. at 2.)  The Rule 33 motion was denied on December 18, 2009.  (Id.) Petitioner was sentenced and subsequently appealed.  The Court of Appeals likewise rejected Petitioner's arguments on appeal and affirmed the conviction.  (Id.)

B. Conviction

Petitioner Quinones was found guilty by a jury of stabbing fellow inmate Rasuan Sanders ("Sanders" or "the victim") in the neck on December 30, 2007 while incarcerated at the Otisville Federal Correctional Institution ("F.C.I. Otisville"). (See Pet. Mot. at 3; Govt. Opp. at 2.)

The evidence introduced against Petitioner at trial included video surveillance of the assault, Petitioner's interview with Special Agent Felipe Orengo of the Federal Bureau of Investigation, the testimony of the victim and other witnesses, and the body wrap worn by Petitioner on the day of the assault. (See Govt. Opp. at 2-4.) Petitioner argued that he was unarmed at the time of the incident and that he simply punched Sanders. Petitioner believed that Sanders was armed and, after being punched, inadvertently stabbed himself in the neck. (Id. at 8.)

C. Rule 33 Motion

Petitioner Quinones first asserted a claim of ineffective counsel shortly after his conviction. (See id.) Susanne Brody, Esq., ("Brody") of the Federal Defenders of New York, had been appointed counsel to Petitioner after his arrest in January 2008. (Id.) Six months later, on July 29, 2008, Quinones requested a new attorney based on a difference of opinion about how his case was to proceed. (Id.)

4

In a pretrial conference on November 21, 2008, Petitioner expressed his concerns about Brody's representation, alleging that she had not acquired video evidence that Petitioner had requested.  (Id. at 9.)  The district court granted Petitioner's request and appointed Porco as replacement counsel.  Porco represented Petitioner through his trial.  After being convicted, Petitioner submitted an eight-page letter to the Court reiterating his concern about the assistance rendered by Brody as well as new concerns about the assistance provided by Porco.  (Id. at 10.)  In light of this letter and at Porco's own request, the district court relieved Porco and appointed Lawrence as counsel for Petitioner.  (Id. at 11.)

On July 28, 2009, Petitioner moved for a new trial pursuant to Fed. R. Crim. P. Rule 33.  Specifically, Petitioner alleged that Porco interfered with Petitioner's right to testify, stipulated to evidence without discussing the decision with Petitioner, and that Brody had failed to obtain video evidence.  (Id.)  The district court held an evidentiary hearing and ultimately rejected Petitioner's claims.  The Court found that there was no interference with the right to testify, that Porco's decision to stipulate to the DNA evidence was neither prejudicial nor unreasonable, and that the video recordings Petitioner had sought were no longer in existence when Brody was first appointed counsel.  (Id. at 12.)  In fact, the Court found

5

that, in addition to being neither prejudicial nor unreasonable, the DNA evidence stipulated to at trial was actually helpful to Petitioner because his DNA was not present on either shank offered by the Government. (Govt. Opp. at 11.)

    D.  <u>Petitioner's Appeal</u>

Petitioner thereafter appealed his conviction. Petitioner argued that the district court erred in denying his Rule 33 motion. (<u>Id.</u>) Petitioner again claimed that Porco interfered with his right to testify, agreed to trial stipulations without consulting Petitioner, and failed to object to evidence introduced at trial on relevance grounds, specifically Government Exhibit Two (the "First Shank"). (<u>Id.</u>) The Court of Appeals rejected Petitioner's claims in their entirety and affirmed his conviction in a summary order. (<u>Id.</u>)

II.  ANALYSIS

    A.  <u>Standard of Review</u>

The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel in a criminal proceeding. <u>See</u> U.S. Const. amend. VI; <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must prove: 1) that counsel's representation fell below an objective standard of reasonableness; and 2) but for counsel's unprofessional errors, the result of the proceeding would have

6

been different.  See Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).  With respect to the first prong of the Strickland test, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 688.  Although this presumption can be overcome, the burden of proving that counsel's performance was unreasonable under the prevailing professional norms lies with Petitioner.  See Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).  With respect to the second prong of the standard, "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."  Strickland, 466 U.S. at 697.

> B.  Claims Raised On Direct Appeal Are Not Cognizable Under
>     § 2255 Because They Have Been Fully Litigated on Appeal

Pursuant to 28 U.S.C. § 2255(e), a claim that has been adjudicated on direct appeal may not be re-litigated through collateral attack.  Yick Man Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010)("[S]trategies, actions, or inactions of counsel that [give] rise to an ineffective assistance claim adjudicated on the merits on direct appeal may not be the basis for another ineffective assistance claim in a Section 2255 proceeding."); U.S. v. Pitcher, 559 F.3d 120, 124-25 (2d Cir. 2009).

Petitioner argued two issues on his direct appeal that he now raises again in this Section 2255 motion.  Petitioner asserts: 1) that counsel agreed to stipulated evidence at trial without consulting Petitioner; and 2) that trial counsel failed to object to the introduction of evidence unrelated to the offense in question.  The Court of Appeals found these claims without merit and affirmed the district court's denial of the motion for a new trial.  Accordingly, because these issues were adjudicated on direct appeal, they may not be litigated again on a Section 2255 motion.  See Davis v. United States, 417 U.S. 333, 342 (1974); see also Yick Man Mui, 614 F.3d at 57; Pitcher, 559 F.3d at 124-25.  Petitioner's fourth and eighth grounds on this motion, which are based on issues previously decided on direct appeal, must therefore be rejected.

    C.   Petitioner's Additional Claims Not Raised On Direct Appeal

In general, the failure to raise a claim on direct appeal (as opposed to an adjudication on that claim) also bars this Court from examining the merits of that claim on a Section 2255 motion.  See Bousley v. United States, 523 U.S. 614, 622 (1998).  Though neither a statutory nor a constitutional requirement, the doctrine is adhered to by the courts to "conserve judicial resources and to respect the law's important interest in the finality of judgments."  Massaro v. United States, 538 U.S. 500,

504 (2003). An exception to this general rule exists, however, with respect to claims of ineffective assistance of counsel. See id. An ineffective assistance of counsel claim may be brought in a collateral proceeding under Section 2255 whether or not Petitioner could have raised the claim on direct appeal. Id. Such an exception allows for the development of the factual predicate for the claim and for the claim to be addressed in the forum best suited to do so.  Id.

Petitioner raises the following additional claims, none of which he advanced on direct appeal and all of which sound in ineffective assistance of counsel.  The Court addresses them in turn.

### 1. Failure to Interview Witnesses

Petitioner claims that his trial counsel offered ineffective assistance by failing to interview witnesses during his investigation of Government Exhibit Two, the weapon found in the prison.  Petitioner contends that had counsel interviewed inmates Freeman ("Freeman") and Walker ("Walker"), and staff from F.C.I. Otisville, they would have provided testimony that it was the victim and one of his cellmates that held the two weapons offered by the Government.

Petitioner cites to Sanders v. Ratelle, 21 F.3d 1446, 1457 (9th Cir. 1994), for the proposition that failure to investigate an alibi witness rises to the level of a Sixth Amendment

9

violation. (See Petitioner's Response to the Government's Response to his 28 U.S.C. § 2255 Motion ("Pet. Reply") at 11, dkt. no 7.) Sanders, however, is distinguishable. Counsel in Sanders failed to interview a witness who confessed to committing the crime for which the defendant was charged. Sanders, 21 F.3d at 1456. The Ninth Circuit agreed the defendant's counsel was ineffective, relying on United States v. Gray, 878 F.2d 702, 711-12 (3d Cir. 1989), wherein counsel was found ineffective because the attorney failed to interview an eye-witness. Id. at 712 (emphasis added). Here, however, there were no other confessions, and Petitioner has not offered any eye witnesses to support his version of the events. Freeman, as the Government notes, was not present at the time of the incident. (See Govt. Opp. at 19.) His statement to the FBI only suggested that it was a cellmate of the victim that possessed one of the weapons recovered after the incident. (See Govt. Opp. Ex. H ("FBI Memorandum").) Petitioner suffered no prejudice because the Government stipulated that Petitioner's DNA was not present on the weapon. (See Govt. Opp. at 21-23.)

To the extent Petitioner argues that these individuals would have offered him "something akin to an alibi," (Pet. Mot. at 9-10), Petitioner fails to present any convincing basis for this assertion. As noted above, Freeman was not present for the stabbing in the courtyard. Furthermore, Petitioner could not

10

have offered an alibi defense in this case.  An alibi is "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time."  Black's Law Dictionary 84 (9th ed. 2009).  The evidence submitted at trial included a video recording of Petitioner assaulting the victim. (Govt. Opp. at 19.)  Even if Freeman testified to what he stated to the FBI, his testimony would not have refuted the Government's case because the Government never claimed that Petitioner's DNA was found on either of the shanks admitted into evidence.  (Govt. Opp. at 22.)  Petitioner offers no other foundation for his belief that the testimony of these individuals would have led the jury to adopt his theory that the victim stabbed himself.  As a result, Petitioner has proven neither that failure to call these witnesses was outside the realm of professional conduct nor that he was prejudiced by this decision.  Strickland, 466 U.S. at 688, 694.  Thus, this claim does not form a basis on which Petitioner's motion may be granted.

    2. Failure to Conduct Pretrial Discovery

Petitioner argues that his counsel was unprepared for trial due to ineffective pretrial discovery.  Petitioner claims that Porco operated under the assumption that the Government had only one weapon to offer into evidence.  (Pet. Mot. at 14.)

Petitioner points out that upon realizing the Government was offering two weapons into evidence, his counsel requested that the court declare a mistrial based on his own ineffective assistance. (Id. at 13-14.) Despite counsel's statement, however, Petitioner's defense remains objectively reasonable.[1] See Strickland, 466 U.S. at 688. ("The proper measure of attorney performance remains simply reasonableness.") The introduction of the First Shank posed little or no risk of prejudice because it was stipulated that Petitioner's DNA was not present. (See Govt. Opp. at 17.) The jury had no reason to infer that Petitioner used either of these particular weapons, merely that they were accessible in the prison. In fact, Petitioner relied on the admission of the First Shank in so far as the defense's theory was that it was the victim's own friends that held the weapon rather than Petitioner. Petitioner has not overcome the presumption that counsel acted reasonably or proven that counsel's actions were prejudicial. Accordingly, this claim does not form a basis upon which Petitioner's motion may be granted.

    3. Failure to Request a Limiting Instruction

---

[1] Strickland makes clear that it is the Court that evaluates whether an attorney's performance was objectively reasonable under the circumstances. Strickland, 466 U.S. at 702. Porco's statement regarding his own performance, therefore, is neither dispositive nor persuasive here.

Petitioner argues that his trial counsel was ineffective by failing to request a limiting instruction regarding Government Exhibit Two, the weapon found in the prison yard.  It was entered into evidence with no objection by defense counsel.  (Govt. Opp. at 17-18.)  Petitioner argues that this weapon is irrelevant to the case and unfairly inflammatory in nature and so counsel's failure to object and request a limiting instruction was outside the realm of professional conduct.  (Pet. Mot. at 17-20.)  Counsel's alleged failure to object generally to the admission of Government Exhibit Two has already been adjudicated by the Court of Appeals and will not be discussed further here.

For the reasons noted above, Government Exhibit Two posed little to no risk of prejudice because the jury was informed that Petitioner's DNA was not present.  The Government did not argue that Petitioner in fact used the weapon.  (Govt. Opp. at 17.)  Additionally, the Court of Appeals has already determined that counsel's failure to object did not prejudice Petitioner.  This Court similarly finds that the lack of a limiting instruction posed no risk of prejudice.  Petitioner's claim on this point does not form the basis on which his motion may be granted.

    4. <u>Plea Discussions</u>

Petitioner asserts that his trial counsel was ineffective in failing to inform him that the Government would be permitted to introduce multiple weapons at trial, a fact he claims would have altered the way in which the plea bargaining proceeded. Petitioner offers no proof for the allegation that he was not properly advised. Despite Petitioner's assertion, it is not the role of the attorney to "change [Petitioner's] mind about going to trial." (See, e.g., Pet. Mot. at 24.) Further, even if counsel did not discuss the admissibility of the shanks during trial, such an omission was likely not material. In his motion, Petitioner mischaracterizes the impact of the weapon. The Government made no attempt to link the weapons admitted directly to Petitioner. (Govt. Opp. at 17.) It was not the case, therefore, that Petitioner was made to "seem as a knife carrier that lead [sic] to the assault against Sanders." (See Pet. Mot. at 24.) This Court, therefore, finds unconvincing Petitioner's argument that mere knowledge of the admissibility of this evidence would have altered the outcome of plea discussions between Petitioner and his counsel.

As the Supreme Court of the United States noted in Strickland, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . and it is all too easy for a court, examining counsel's defense . . . to conclude that a particular act or omission of counsel was

14

unreasonable." 466 U.S. at 689. Because Petitioner has not shown that counsel did not advise him or demonstrated that the outcome would have been different if he had, this claim does not form a basis on which the motion may be granted.

     5. <u>Failure to Investigate and Extrinsic Evidence</u>

Petitioner's final two claims regard his appellate counsel, Kerry Lawrence. Broadly construed, Petitioner challenges Lawrence's performance with respect to the ineffective assistance of counsel claims raised on direct appeal. Petitioner claims his counsel omitted significant and obvious issues, such as a limiting instruction for Government Exhibit Two or that such evidence was extrinsic, in favor of weaker ones. (<u>See</u> Pet. Mot. at 16-20, 20-23.)

Petitioner's argument fails for two reasons. First, Lawrence did pursue four separate claims of ineffective assistance: (1) Porco interfered with Petitioner's ability to decide knowingly and voluntarily whether to testify at trial; (2) Porco failed to prepare Petitioner to testify; (3) Porco failed to object to the introduction of evidence unrelated to the offense in question, and (4) Porco agreed to stipulated evidence at trial without consulting Petitioner. (<u>See</u> Govt. Opp. Ex. F.) All claims were rejected by the Court of Appeals.

Second, the additional claims not raised on direct appeal were either denied as part of Petitioner's Rule 33 motion or

have now been rejected as part of the motion sub judice.  As such, it is manifestly reasonable that Lawrence did not pursue these claims on direct appeal, and Petitioner suffered no prejudice as a result.  Petitioner's ineffective assistance of appellate counsel claims therefore fail.  A competent attorney would not necessarily have raised the alleged errors Petitioner claimed here because competent attorneys are expected to pursue stronger arguments over those determined to be weak or frivolous.  See, e.g., Jones v. Barnes, 463 U.S. 745, 751-52 (1983); Cunningham v. Henderson, 725 F.2d 32, 35 (2d Cir. 1984).  Constitutionally inadequate performance may only be shown therefore if Petitioner can prove that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.  Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  In light of the strong presumption in favor of finding counsel's conduct professionally competent, Strickland, 466 U.S. at 689, and because these alleged errors have since been found meritless, see Part II.C, supra, Petitioner cannot demonstrate that his appellate representation was deficient.  Accordingly, these final claims do not form a basis on which Petitioner's motion may be granted.

## CONCLUSION

For the foregoing reasons, Petitioner's 28 U.S.C. § 2255 motion for habeas relief is DENIED.

SO ORDERED.

Dated:   New York, New York
         June 20, 2012

*Loretta A. Preska*
LORETTA A. PRESKA
Chief U.S. District Judge